UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN CARLOS GINES-HERNANDEZ,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-03348-HSG

**ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 7

Pending before the Court is Petitioner Juan Carlos Gines-Hernandez's Motion for a Temporary Restraining Order ("TRO").  Dkt. No. 7.  The Court **DENIES** the motion.

**I.    BACKGROUND**

Petitioner alleges that he was a police officer in Mexico, and that he came to the United States in 2018 after his partner was killed and threats were made against his life.  Dkt. No. 1 ("Pet.") ¶ 2.  He was promptly arrested near the border for misdemeanor illegal entry in violation of 8 U.S.C. § 1325(a)(2), and he was charged in the Southern District of California.  *See* Pet. ¶ 21; *United States v. Gines-Hernandez*, No. 18-mj-22128-WQH-1 (S.D. Cal. Oct. 10, 2018) ("S.D. Cal. Case"), Dkt. No. 1.[1]  Petitioner was ordered released on bond by the magistrate judge on November 8, 2018.  Pet. ¶ 22; S.D. Cal. Case, Dkt. No. 21.  A bench warrant was issued for his arrest on November 23, 2018, after he apparently failed to report to Pretrial Services following his release.  S.D. Cal. Case, Dkt. Nos. 23, 24.

___

[1] Undisputed evidence from Respondents suggests that Petitioner was first apprehended by a border patrol agent on October 9, 2018, near San Ysidro, CA.  Dkt. No. 10-1 ¶ 4; Dkt. No. 10-2 at 2.  Respondents also introduce evidence that Petitioner was given a Notice and Order of Expedited Removal on that day after determination that he was inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *See* Dkt. No. 10-2 at 2.

United States District Court
Northern District of California

Eight years later, Mr. Gines-Hernandez was arrested on April 8, 2026, in the Northern District of California. Pet. ¶ 23; *United States v. Gines-Hernandez*, No. 26-mj-70398-MAG-1 (N.D. Cal. Apr. 8, 2026) ("N.D. Cal. Case"), Dkt. No. 1. On April 20, 2026, the court found that the warrant for Mr. Gines-Hernandez's arrest was facially invalid and issued a release order. Pet. ¶ 24; N.D. Cal. Case, Dkt. Nos. 10, 12. The government then moved to dismiss the pending misdemeanor charge in the Southern District. Pet. ¶ 24; S.D. Cal. Case, Dkt. Nos. 41, 42. However, Petitioner alleges that he "was not released from [the] U.S. Marshal's custody, but was re[-]detained and held for" Immigration and Customs Enforcement ("ICE"). Pet. ¶ 25. Respondents represent that Petitioner was initially booked into ICE's San Francisco Hold Room at 630 Sansome Street at 6:15 a.m. on April 21, 2026, but he has since been transferred to the California City Detention Facility. Dkt. No. 9.[2]

On April 21, 2026, Petitioner filed a writ of habeas corpus, Dkt. No. 1, and a motion for a temporary restraining order "requiring ICE to immediately release [Petitioner] from custody" and "enjoining Respondents from re-detaining him before providing him a hearing before a neutral adjudicator prior to any re-detention," Dkt. No. 7 ("Mot.") at 3. Petitioner argues that Respondents have violated his Fifth Amendment procedural due process rights and the Immigration and Nationality Act and its implementing regulations. Pet. ¶¶ 36–45. Mr. Gines-Hernandez argues that he has a protected liberty interest which requires a meaningful pre-detention process, as he had established a life in the United States and was living in Santa Rosa with his pregnant wife and three daughters. *Id.* ¶¶ 2, 4. Mr. Gines-Hernandez has no other criminal record. *Id.* ¶ 25.

The Court ordered Respondents to file a response, Dkt. No. 7. Respondents did so, Dkt. No. 10 ("Opp."), and Petitioner filed a reply, Dkt. No. 12 ("Reply").

---

[2] The Court stated in an order on April 21, 2026, at 4:22 p.m. that "Respondents are BARRED from transferring Petitioner out of this District or removing him from the country, until the Court has ruled on the motion for a temporary restraining order." Dkt. No. 8 at 1 (emphasis omitted). However, Respondents filed a status update explaining that they had already transferred Petitioner to California City in the Eastern District of California by 4:00 p.m. on April 21, 2026. Dkt. No. 9. They agree that the Court nevertheless retains jurisdiction because Petitioner was in the Northern District at the time the petition was filed. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction.  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017).  Thus, a party seeking a temporary restraining order must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).  "[W]hen the Government is the opposing party," the final two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III.    DISCUSSION

Petitioner argues that "a temporary restraining order is warranted due to Mr. Gines-Hernandez's weighty liberty interest under the Due Process Clause of the Fifth Amendment in remedying his unlawful detention, where that detention was imposed absent a pre-deprivation due process hearing."  Mot. at 2–3.  The Court finds that Petitioner has not adequately shown that there are "serious questions going to the merits," *Friends of the Wild Swan*, 767 F.3d at 942, regarding Petitioner's right to pre-detention notice and hearing.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution,

no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quotation omitted). "The Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) (quotation omitted).

"In order to analyze a procedural due process claim, [courts] engage in a two-step analysis" which first "determine[s] whether the [detainee] was deprived of a constitutionally protected liberty or property interest" and then "examine[s] whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). To determine whether the procedural protections provided are sufficient at the second step, courts consider (1)"the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As Petitioner notes, "[n]umerous courts" have applied this test and "granted temporary restraining orders to non-citizens who were detained by ICE without a bond hearing, even after years spent living in the U.S. without incident." Mot. at 5. In the typical case—and in many of the cases cited by Petitioner—a petitioner is re-detained after being released by immigration officials, despite remaining compliant with the terms of release. *See, e.g., R.C.C. v. Noem*, No. 1:26-CV-00373- TLN-EFB, 2026 WL 369796, at *3 (E.D. Cal. Feb. 10, 2026); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Qazi v. Albarran*, No. 2:25-CV-02791-TLN-CSK, 2025 WL 3033713, at *2, *5 (E.D. Cal. Oct. 10, 2025). In such cases, courts have noted that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody, she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032; *R.C.C.*, 2026 WL 369796, at *3 ("Petitioner gained a liberty interest in his continued freedom after he was released from custody

United States District Court
Northern District of California

on his own recognizance in 2022. . . . [T]his release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release."); *see also Kharitonova v. Albarran*, No. 3:26-CV-01362- JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place . . . ." (emphasis omitted)).

Courts have then conducted a *Mathews* analysis, finding "a substantial private interest in remaining out of custody," "a significant risk that the government will erroneously deprive [petitioner] of that liberty interest if it does not provide her with a pre-detention hearing," and little or no countervailing government interest in conducting a bond hearing only after detention. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1033–36. When assessing the second and third factors, courts have emphasized that the petitioner had been compliant with the terms of their release. *See id.* at 1036 (noting no countervailing government interest where petitioner "ha[d] diligently attended every required hearing in immigration court and ha[d] complied with every demand made of her by ICE"); *Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1121–22 (D. Idaho 2025) ("The government has identified no information establishing Petitioner poses a danger or flight risk."); *Juarez-Juarez v. LaRose*, No. 26-CV-1319-LL-BJW, 2026 WL 686169, at *3 (S.D. Cal. Mar. 11, 2026) (noting that "[t]here is no indication that Petitioner has failed to abide by the conditions of his release" and "neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention"); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (noting the government's interest in re-detaining petitioner was low "particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements").

This is not the typical case. Petitioner was released on bond in his 2018 criminal case, S.D. Cal. Case, Dkt. No. 21, but it appears to be undisputed that he subsequently absconded and *did* fail to abide by the conditions of that release.[3] It is only because the 2018 bench warrant was

---

[3] In fact, it appears from the minute entry in Petitioner's Northern District case that he recently had a chance to argue that he should be released from criminal custody when he was apprehended in April 2026, and the "Court [found] the government ha[d] met its burden regarding risk of non-appearance." N.D. Cal. Case, Dkt. No. 2.

United States District Court
Northern District of California

found to be facially invalid that Petitioner was ordered released from the custody of the United States Marshal, and Petitioner does not provide any additional detail about the release proceedings or the defect in the warrant.

Under these very specific facts, Petitioner has not met his burden of demonstrating a "serious question" as to whether the *Mathews* test requires a pre-detention bond hearing.[4] Petitioner still has a substantial private interest in remaining out of custody, which allows him "to be with family and friends and to form the enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). But the erroneous risk of deprivation appears to be lower here, where a district court judge apparently determined that Petitioner had not complied with the terms of his criminal bond and issued a warrant for his re-arrest, S.D. Cal. Case, Dkt. No. 24, and where a court recently found that the government had met its burden to detain Petitioner given the risk of non-appearance, N.D. Cal. Case, Dkt. No. 2. For similar reasons, the government's interest in detaining Petitioner without a pre-detention hearing appears to be higher here, where Petitioner did in fact flee after he was previously released and did not comply with his reporting requirements in the last eight years.[5]

Petitioner tries to skip by these points, stating that he was previously granted release "because he did not pose a danger or flight risk" and those "circumstances have not changed." Pet. ¶ 35; Mot. at 10; Reply at 8. But this fails to acknowledge the obvious fact that he fled the jurisdiction right after that determination.[6] And despite the Court's request for Petitioner to

---

[4] Here, the Court assumes without deciding that Petitioner is not currently subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(1) and that he has a protected liberty interest. As discussed below, there is some uncertainty regarding whether 8 U.S.C. § 1225(b)(1) or § 1226(a) applies here.

[5] In at least one similar case, a court has denied immediate release for failure to grant a pre-detention hearing, but has ordered a post-detention hearing. *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11–*12 (E.D. Cal. Aug. 28, 2025) (granting only post-detention bond hearing where "it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight" in light of multiple parole violations). Petitioner does not seek that relief in his motion.

[6] This is not a conclusive determination that Petitioner is actually a flight risk. Petitioner can plausibly argue that his ties to the Santa Rosa community and his pregnant wife and three children substantially eliminate any risk. But Petitioner's unwillingness to confront the plain facts of his case make the Court skeptical that he can show he was entitled to a pre-detention bond hearing.

United States District Court
Northern District of California

identify cases with more comparable facts, Dkt. No. 11, Petitioner continues to cite distinguishable cases in his reply: in all of those cases, the detainee had complied with their release conditions. *See, e.g.*, *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at \*5 (N.D. Cal. Sept. 5, 2025) (noting that "nothing in the record indicates that [petitioner] is a flight [risk]"). This is not enough to show serious questions going to the merits of Petitioner's procedural due process claim.

Petitioner also argues that he is statutorily entitled to a bond hearing under 8 U.S.C. § 1226. *See* Mot. at 6–8. But even assuming that provision applies here—an assumption which the Court discusses further below—Petitioner's cases require an eventual bond hearing, not a pre-detention bond hearing. *See, e.g.*, *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1102 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (noting requirements of an "initial custody determination" and "an initial bond hearing before a neutral decisionmaker"). And the Court likely lacks the authority to preemptively order Petitioner's release on the argument that the immigration "agency is structurally incapable of providing noncitizens with impartial bond determinations." Mot. at 7. If the Court adopted that approach, it would presumably have to order release from detention in almost every case, effectively overriding Congressional intent in passing the detention provisions of §§ 1225 and 1226.

Accordingly, while the Court acknowledges the substantial liberty interests here, the Court concludes that Petitioner has not adequately raised "serious questions" going to the merits as to Petitioner's entitlement to immediate release or a pre-detention hearing, and the Court declines to analyze the remaining *Winters* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." (internal quotation marks and citations omitted)). This does not mean that Petitioner might not be able to succeed at a later stage, nor does the reasoning of this order apply to other detainees who are not in

the unusual factual circumstance that Petitioner appears to be in.[7]

While this resolves the instant TRO request, the Court must briefly address whether Petitioner's detainment is based on 8 U.S.C. § 1225(b)(1) or § 1226(a). Petitioner was apprehended shortly after he entered the United States and—as far as the Court can tell from the current record—was given a Notice and Order of Expedited Removal after a determination of inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Dkt. No. 10-1 ¶ 4; Dkt. No. 10-2 at 2. As a result, Respondents argue that Petitioner is subject to mandatory detention under 8. U.S.C. § 1225(b)(1). Opp. at 11.[8] Petitioner argues that he is no longer subject to expedited removal under § 1225(b)(1) because he was "paroled into" the United States for prosecution for his illegal entry misdemeanor and was subsequently released on bond. *See* Reply at 5; 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (including only aliens who have "not been admitted or paroled into the United States").

Petitioner's placement in criminal proceedings and subsequent bond by the criminal court (or other actions by immigration officials) could at least in theory mean that he was paroled into the United States. *See Aviles-Mena v. Kaiser*, 2025 WL 2578215, at *5 ("[W]hen ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track their removal and that it will proceed with the standard removal process."). But in Petitioner's cited cases, it was apparently undisputed that the Department of Homeland Security ("DHS") had paroled the petitioners pursuant to 8 U.S.C. § 1182(d)(5)(A). *See id.* at *4; *Daza v. Albarran*, No. 25-CV-10214-RFL, 2026 WL 81518, at *2 (N.D. Cal. Jan. 12, 2026); *Wang v. Lyons et al.*, No. 3:25-CV-10794-WHO (N.D. Cal. Jan. 20, 2026), Dkt. No.

---

[7] The Court defers addressing Respondents' argument that "all Respondents other than Petitioner's immediate custodian, Sergio Albarran, [] be dismissed from this case." Opp. at 18. The parties should attempt to resolve this via stipulation.

[8] Respondents also argue that every immigrant who enters the United States remains an "applicant for admission" who is "seeking admission" and subject to mandatory detention under 8 U.S.C. § 1225(b)(2), "even if that alien has been present in the U.S. for years." Opp. at 12. This expansive position has been squarely rejected by scores of courts in the country, including this one. *See, e.g.*, *De La Garza v. Albarran*, No. 25-CV-10305-HSG, 2025 WL 3485157, at *3 (N.D. Cal. Dec. 4, 2025); *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1086 (N.D. Cal. 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). The Court again rejects this interpretation.

United States District Court
Northern District of California

18, at 2. Petitioner argues that "[t]he only difference in these cases is that [those petitioners were] paroled into the United States by DHS, and Mr. Gines-Hernandez was paroled into the United States for prosecution (a different arm of the same government)." Reply at 3. It's possible that argument is correct, but Petitioner only cites two out-of-circuit cases supporting this contention, *see* Dkt. No. 13, and does not grapple with the language that parole under § 1182(d)(5)(A) may only be for "urgent humanitarian reasons or significant public benefit."[9][10] As a result, the Court is not persuaded that Petitioner has adequately demonstrated serious questions going to the merits of whether he was paroled into the United States, though he may be able to do so later.

But whether Petitioner's detention can proceed under 8 U.S.C. § 1225 may have implications for whether Petitioner is entitled to a prompt post-detention bond hearing. *See Rodriguez*, 53 F.4th at 1202 (discussing the "extensive procedural protections [in § 1226(a)] that are unavailable under other detention provisions"). Respondents flatly state that they believe Petitioner has "no right to a bond hearing." Opp. at 12. If Petitioner is subsequently denied a prompt post-detention bond hearing and he is properly subject to § 1226(a), Respondents may well have denied his procedural due process rights. In light of this, Petitioner is directed to file a motion for preliminary injunction if he continues to believe that he is entitled to the protections of 8 U.S.C. § 1226(a), and Respondents maintain the position that he is not and deprive him of a bond hearing. To prevail, Petitioner will need to either (1) fully explain the legal authority supporting the argument that Petitioner's criminal charge and release on bond constituted parole into the United States within the meaning of 8 U.S.C. § 1225(b)(1);[11] or (2) introduce factual

---

[9] Of the two cases, *Doe v. Attorney General of U.S.*, 659 F.3d 266 (3d Cir. 2011), is the more persuasive. There, DHS apparently "purported to parole [someone] for prosecution" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.* at 269. But the case essentially accepts as true the idea that paroling for prosecution is permitted under that statute, instead considering whether a lawful permanent resident could be paroled. *See id.* at 269–70.

[10] It appears that an earlier version of the implementing regulations for the INA may have included language that "Aliens subject to prosecution in the United States who are needed for the purposes of such prosecution may be paroled to the custody of the appropriate responsible agency or prosecuting authority." *Singh v. Nelson*, 623 F. Supp. 545, 551 (S.D.N.Y. 1985). To the Court's knowledge, that language no longer exists.

[11] This discussion should address, for example, why it is not dispositive that the magistrate judge, not DHS, made the decision to release Petitioner from detention into the community on bond

support (such as the parole notice discussed in *Aviles-Mena*) showing that Petitioner was paroled pursuant to, for example, 8 U.S.C. § 1182(d)(5)(A).

## IV. CONCLUSION

The Court **DENIES** Petitioner's motion for a temporary restraining order, Dkt. No. 7. Petitioner is **DIRECTED** to file any motion for preliminary injunction by May 1, 2026. Respondents' opposition will be due on May 8, 2026.  If Petitioner chooses not to file a motion for preliminary injunction, the parties should instead file a stipulation and proposed order setting out an expedited briefing schedule for the habeas petition by May 1, 2026.

**IT IS SO ORDERED.**

Dated:   4/24/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

conditions.

10